**Loretta J. Brokeshoulder SCHWARZ,
Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH & HUMAN
SERVICES, Defendant–Appellee.**

No. 94–35974.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1995.

Decided Dec. 22, 1995.

element of the crime, a similar result would seem apparent.") (citation omitted).

Fredric J. Gross, Mount Ephraim, New Jersey, for plaintiff-appellant.

Barry F. Smith, United States Department of Health and Human Services, Washington, DC, and Ronald K. Silver, Assistant United States Attorney, Portland, Oregon, for defendant-appellee.

Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to consider the scope of a district court's discretion to reduce the lodestar in a civil rights action for the time devoted to dismissed claims that the court found unrelated to a successful claim. We must also decide whether a reasonable attorney's fee under 42 U.S.C. § 2000e–5(k) must be calculated by reference to the rates generally charged by attorneys in the area where the plaintiff's counsel practices or where a suit that is subsequently transferred was originally filed, instead of by reference to the local forum.

Loretta J. Brokeshoulder Schwarz appeals the amount of attorney's fees awarded at the end of a circuitous journey to Fredric J. Gross, her lead counsel.[1] She originally brought a five-count employment discrimination action against the Secretary of Health and Human Services in the District of Columbia. It was quickly transferred to Phoenix because the allegations had to do with misconduct by personnel officials in the Phoenix office of the Indian Health Service and the relief sought was retroactive appointment to the position of Phoenix Area Financial Manager. A couple of years, extensive discovery and numerous motions later, the action wound up in Portland after all but one part of one claim had been dismissed and a second amended complaint had been filed changing the focus to conduct that occurred in the Portland office of the Indian Health Service and to a request for appointment as the Portland Area Financial Manager. Following summary judgment proceedings in Portland that left a "glass ceiling" claim intact, Schwarz settled her case, advantageously. The district court declined to award attorney's fees and costs for Schwarz's lead counsel on claims that had been dismissed before that action was transferred to Portland and that it found were unrelated to the glass ceiling claim on which she ultimately prevailed, but it did award fees on Schwarz's

successful discrimination claim based on its approximation of the hours spent on the successful claim and the going rate in Phoenix and Portland, adjusted upward by 25% because Gross had the laboring oar as lead counsel.

We hold that the fee award was within the district court's discretion under *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), and *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.1986). As we have jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Schwarz filed her original complaint in February 1989 in the District of Columbia, challenging the selection of a non-Indian male, instead of her, for the position of Financial Manager of the Phoenix Area Office of the Indian Health Service. She asserted five claims: (1) sex discrimination in violation of Title VII; (2) violation of the Indian Preference Act (IPA), 25 U.S.C. § 472; (3) violation of the IPA requirement of separate job qualification criteria for Indians; (4) race discrimination in violation of Title VII; and (5) violation of anti-nepotism laws, 5 U.S.C. § 3110(b). Her theory was that agency personnel and management officials, principally the Phoenix area personnel manager, B. Bowman–Ryan, improperly qualified and then selected Bowman–Ryan's husband instead of Schwarz for the position of IHS Phoenix Area Financial Manager. As to each claim, Schwarz sought retroactive appointment to the position of IHS Phoenix Area Financial Manager.

After the Secretary successfully moved for a change of venue to the District of Arizona, Schwarz filed an amended complaint in December 1989 which dropped her nepotism claim but added a claim under the Equal Pay Act (EPA), a provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). Schwarz continued to seek retroactive appointment to the Phoenix Financial Manager position, and now also sought back pay and

---

**1.** One other counsel was awarded his full attorney's fee request and another counsel's award was reduced in the same manner that Gross's fee

was reduced. Schwarz's appeal pertains only to Gross.

statutory liquidated damages provided by the FLSA.

The Arizona District Court subsequently granted summary judgment for the Secretary on the third claim (for a violation of the IPA) to the extent that Schwarz sought retroactive appointment to the Phoenix position. Twenty months later, the court dismissed the EPA claim. One year after that, the court granted summary judgment for the Secretary on the second and third claims (violations of the IPA), the fourth claim (race discrimination), and the first claim (sex discrimination) to the extent Schwarz alleged that the Phoenix office discriminated against her based on her sex. That left Schwarz with one issue raised by her sex discrimination claim—that a pattern and practice of sex discrimination in the Portland office created a glass ceiling that resulted in the denial of promotions and disqualified her from area manager positions.

In May 1992, Schwarz filed a second amended complaint with a glass ceiling and a reprisal claim. In this pleading she sought retroactive appointment to the position of IHS Portland AFM, as well as compensatory damages. Schwarz successfully moved for transfer to Portland; there, after she filed a third amended complaint and the Secretary again sought summary judgment, which the district court denied, the case settled.

Schwarz then applied for costs and attorney's fees of almost $300,000 for four sets of counsel. This appeal relates only to Fredric J. Gross, her lead counsel, for whom Schwarz requested compensation for 529.50 hours of his time at the rate of $325/hour ($172,087.50); for 67.00 hours of his paralegal's time at $70/hour ($4,690.00), for a total fee request of $176,777.50; and for approximately 50 hours of Gross's expert witness's time at $150.00/hour, together with some of the expert's expenses, for a total expert witness request of $7,908.30. Schwarz also requested reimbursement of $7,531.96 for other expenses, such as travel and FAX. Finally, Schwarz requested payment of fees-on-fees for the 63.25 hours spent by Gross preparing the fee application (totalling $21,005.40 at $325/hour, plus $449.15 for expenses).

Following a hearing, the district court broke the case into two phases: the unproductive Washington, D.C./Phoenix phase, and the successful Portland phase. The court concluded that only the glass ceiling portion of one of the four distinct claims for relief raised before transfer survived the dismissals in Phoenix, and that the several unsuccessful claims and the lone successful claim were based on different factual and legal theories. The court found that 100% of the Portland phase hours were productive and assumed that all the hours spent on the sex discrimination claim (including the part that was dismissed) contributed to Schwarz's success on the glass ceiling portion of that claim in Portland. It therefore concluded that 25% of the pre-Portland hours were productive and contributed to Schwarz's favorable settlement.

The district court looked to the prevailing market rates in Portland and Phoenix to determine the hourly rate. Finding that to be $150/hour, it increased the basic rate to $200/hour for Gross due to his role as lead counsel. Accordingly, the court awarded $11,842.50 for the Phoenix phase (.25 × 236.85 hours × $200) and $49,690.00 for the Portland phase (1.00 × 248.45 hours × $200) for a total of $61,532.50. The district court then reduced by 50% the expert witness and legal assistant fees which Schwarz sought for Gross, as well as the amount she sought for his role in litigating the merits fees (so-called "fees-on-fees"). Schwarz filed this timely appeal of the fee award.

## II

We review a district court's award of attorney's fees and costs for an abuse of discretion. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. But "any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable *de novo.*" *Hall v. Bolger,* 768 F.2d 1148, 1150 (9th Cir.1985). A district court's fee award does not constitute an abuse of discretion unless it "is based on an inaccurate view of the law or a clearly erroneous finding of fact." *Corder v. Gates,* 947 F.2d 374, 377 (9th Cir.1991).

## III

### A

In cases such as this, brought under 42 U.S.C. § 2000e–16(a), "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs...." 42 U.S.C. § 2000e–5(k). The parties agree that Schwarz is the "prevailing party"; indeed, the terms of the settlement itself are conclusive proof of that. The only issue before us is whether the district court abused its considerable discretion in determining what attorney's fee is "reasonable" under the circumstances of this case.

 Our examination of the reasonableness of any fee award must begin with the Supreme Court's decision in *Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[2] Under *Hensley*, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. But the district court has discretion to make a downward adjustment to the components or the product of this initial equation—typically known as the "lodestar"—for the "results obtained" in the litigation, which is a "particularly crucial [factor] where a plaintiff is deemed 'prevailing' even though [she] succeeded on only some of [her] claims for relief." *Id.* at 434, 103 S.Ct. at 1940.

Where the plaintiff succeeds on only some of her claims, as Schwarz did here, the district court must address two questions under *Hensley:* "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [she] succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

*Id.* If the plaintiff has prevailed on some claims but not on others, the court must evaluate whether the successful and unsuccessful claims are "distinctly different claims for relief that are based on different facts and legal theories" or whether they "involve a common core of facts or [are] based on related legal theories." *Id.* at 434–35, 103 S.Ct. at 1940. If the claims are distinctly different, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440, 103 S.Ct. at 1943. This must be, the *Hensley* Court explained, because "work on [such] an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.* at 435, 103 S.Ct. at 1940 (quoting *Davis v. County of Los Angeles*, 8 EPD ¶ 9444, at 5049, 1974 WL 180 (C.D.Cal.1974), which the Senate Report cited in the legislative history of § 1988). But if the claims are related, the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," *id.*, and "a plaintiff who has won substantial relief should not have [her] attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440, 103 S.Ct. at 1943.

 In the wake of *Hensley*, we have instructed the district courts to follow a two-part analysis in those cases in which a plaintiff's success is limited:

First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours

2. That the Court in *Hensley* was interpreting 42 U.S.C. § 1988, rather than 42 U.S.C. § 2000e–5(k), is of no moment. As the Court explained in *Hanrahan v. Hampton*, 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980) (per curiam), "[t]he provision for counsel fees in § 1988 was patterned upon the attorney's fees provisions contained in Titles II and VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k)...." Thus, as the Court in *Hensley* concluded, "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Thorne,* 802 F.2d at 1141 (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940); *see also Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1465 (9th Cir.1988), *vacated on other grounds,* 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989), *reinstated,* 886 F.2d 235 (9th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990); *Corder,* 947 F.2d at 379.

Relying on *Hensley* and its progeny, the district court concluded that Schwarz pursued only one successful claim and numerous unsuccessful claims, and that Schwarz's lone successful claim and her several unsuccessful claims "were based on different facts and legal theories," and that "much of the attorney's work on the failed claims was unrelated to the claim that proved to be meritorious." Consequently, the district court excluded from the calculation of reasonable hours its best estimate of the hours spent by Schwarz's lawyers litigating the unsuccessful and unrelated claims. While Schwarz doesn't quarrel with the legal principles embraced by the district court, she mounts a multi-pronged attack against the court's application of those principles.

### B

Schwarz suggests that the dismissed claims should not be viewed as "unsuccessful" because they were *wrongly* dismissed and were dismissed on the law, not on the facts. However, nothing in *Hensley* suggests that we should revisit the merits of each previously dismissed claim before characterizing it as "unsuccessful." It would neither be practical, nor consistent with *Hensley,* to do so; every fee application would otherwise become another battle over the merits, which is precisely what *Hensley* sought to avoid by cautioning that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. at 1941.

Nor are we persuaded by Schwarz's contention that the *reason* for a claim's dismissal makes a difference. As *Hensley* holds, a claim is unsuccessful "[w]here the plaintiff has failed to prevail on [it]." *Id.* at 440, 103 S.Ct. at 1943. The Court attached no significance to whether the claim has failed on account of legal, or factual, deficiency; a plaintiff's failure to prevail on a particular claim is no less a failure because it results from a dismissal on the law, rather than on the facts, or when it is the plaintiff, rather than the court, who dismisses the claim.

■ We therefore conclude that a claim may be deemed unsuccessful under *Hensley* once it has been dismissed by the plaintiff or by the court, regardless of whether the dismissal would have been upheld on appeal, and regardless of whether the dismissal is based on legal or factual inadequacy.

### C

Schwarz maintains that any downward adjustment for the hours spent on her unsuccessful claims was inappropriate under *Hensley* because her successful and unsuccessful claims were "closely related," and because she had good reasons for bringing each of the unsuccessful claims.

### (1)

Schwarz contends that each of her claims was closely related because the pertinent facts on which the claims rested essentially were the same. These facts, she explains, were that her employer used the identical illegal discriminatory process and decision-making procedures to deny her a job in both Phoenix and Portland. We cannot conclude, however, that the district court abused its discretion by finding otherwise.

The Court in *Hensley* explained that claims are unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories"; claims are related if they "involve a common core of facts or [are] based on related legal theories." *Id.* at 434–35, 103 S.Ct. at 1940. While offering these general principles, *Hensley* also recognized that "there is no

certain method of determining when claims are 'related' or 'unrelated.'" *Id.* at 437 n. 12, 103 S.Ct. at 1941 n. 12.

We have had few occasions to consider whether claims are related or unrelated under *Hensley*. In *Thorne*, 802 F.2d at 1141, we acknowledged that "[t]he test for relatedness of claims is not precise," but drew guidance from the Seventh Circuit's opinion in *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983). We concluded that "the test is whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Thorne*, 802 F.2d at 1141 (quoting *Mary Beth G.*, 723 F.2d at 1279). Thus, the focus is to be on whether the unsuccessful and successful claims arose out of the same "course of conduct." If they didn't, they are unrelated under *Hensley*.

Most of the cases we have decided since *Thorne* either have applied its "course of conduct" benchmark with only slight modification, *see, e.g., Cabrales*, 864 F.2d at 1466 (examining whether the plaintiff's successful and unsuccessful claims "were premised on the same set of circumstances"); *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 619 (9th Cir.1993) (concluding that the claims "rely on different facts for support"), or have quoted and applied the standard articulated in *Hensley* without elaboration, *see, e.g., Corder*, 947 F.2d at 379 (concluding that "all of the claims arose from a 'common core of facts' ... [and] are 'based on related legal theories'").

But in *Herrington v. County of Sonoma*, 883 F.2d 739, 747 (9th Cir.1989), we added something to *Thorne* by asking whether the "[unsuccessful claim] arises from the same core of facts as the [successful claim] and [whether] it is likely that some of the work performed in connection with the [unsuccessful claim] also aided the work done on the merits of the [successful claim]." Twice since *Herrington* we have embraced a similar standard in connection with a request for attorney's fees incurred for an unsuccessful *stage* of an ongoing, yet ultimately successful, litigation. *See Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir.1991) ("we read *Hensley* as establishing the general rule that plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims."); *see also Romberg v. Nichols*, 970 F.2d 512, 524 n. 8 (9th Cir. 1992), *vacated and remanded on other grounds*, 506 U.S. 1075, 113 S.Ct. 1038, 122 L.Ed.2d 348 (1993) (concluding that a court need not compensate an attorney "for efforts expended on extraneous and dismissed claims that did not contribute to the victory").

Most recently, we have applied the *Thorne* "relatedness" test without further adornment. *See O'Neal v. City of Seattle*, 66 F.3d 1064, 1068–69 (9th Cir.1995) (applying *Thorne* and upholding district court's conclusion that pursuing unsuccessful motion for class certification was not a separate claim, but a method of pursuing ultimately successful claim; also instructing court to revisit attorney's fees awarded in light of reversal of injunction); *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir.1995) (applying *Thorne* to affirm district court's finding that state tort claims were related to Title VII claim because they arose out of common core of facts that required virtually the same evidence).

■ Applying the standard set out in *Thorne* and its progeny, we conclude that the district court was well within its discretion in finding that Schwarz's several unsuccessful claims are unrelated to her lone successful claim. Except for that part of her sex discrimination claim on which she ultimately prevailed, Schwarz proceeded on different legal theories before Portland—violation of the Indian Preference Act, race discrimination, and nepotism in the Phoenix IHS office—and after. The course of conduct about which she complained, and the relief sought, were entirely distinct and separate. The crux of Schwarz's pre-Portland complaint was that agency personnel and management officials in the Phoenix office of IHS improperly qualified (and selected) the Phoenix per-

sonnel officer's husband, a white male, while finding Schwarz unqualified, for the position of IHS Phoenix Area Financial Manager. Each of the five claims in the original complaint focused exclusively on the appointing process in Phoenix for the Phoenix position; the only relief sought on each claim was retroactive appointment to the position of IHS Phoenix Area Financial Manager; and the principal factual issues raised by these claims were the knowledge and actions of the Phoenix area personnel manager. The second amended complaint upon which she prevailed, on the other hand, focused on Portland, where she claimed that agency officials had erected a "glass ceiling" by holding her in pay grade 12, thereby disqualifying her from a promotion to the IHS Portland Area Financial Manager, and had intentionally delayed seeking reclassification of her position in retaliation for Schwarz's EEO complaint. She sought retroactive appointment to the position of IHS Portland Area Financial Manager.

Schwarz argues that her alternative legal theory of race discrimination contributed to victory by foreclosing a nepotism defense, and the IPA claims provided a potential lever for settlement and served as a fall-back position in case of failure on the "quality of experience" requirement for Title VII. However, we can't say that the district court abused its discretion in finding otherwise. As Schwarz acknowledged in the joint status report filed in Portland, extensive discovery had been undertaken before transfer but it didn't focus on the Portland claims, which took their form shortly before the case was transferred and viewed different people as the prime perpetrators of the wrongs alleged.

As it was within the district court's discretion to find that Schwarz's unsuccessful claims were distinctly different claims for relief based on different facts and legal theories from the claim on which she ultimately prevailed, the court properly concluded that Schwarz's unsuccessful claims were not related. The unsuccessful claims did not involve the same course of conduct as her successful claim and the efforts expended on the unsuc-

cessful claims did not contribute to her prevailing on the successful claim.

### (2)

■ Schwarz suggests that the district court should not have found the claims to be unrelated because she asserted all claims as part of a "good faith strategy." But this fact is immaterial to determining whether her unsuccessful claims are unrelated to the successful claim. There is no suggestion that they weren't brought in good faith or didn't pass muster under Rule 11; in any event, neither *Hensley* nor *Thorne* admits of Schwarz's view that claims may be deemed "related" merely because they were brought for valid reasons.

Accordingly, once the district court properly concluded that the unsuccessful claims were not related to the successful claim, it was not required to go further to consider whether the time spent on the unsuccessful (and unrelated) claims should, nevertheless, be compensable just because the claims were advanced in good faith.

### D

■ Schwarz maintains that the district court's methodology for identifying the hours spent on the unsuccessful claims constitutes reversible error because *Hensley* forbids reduction of the lodestar by a ratio of unsuccessful to successful claims. We disagree.

■ Once a district court concludes that a plaintiff has pursued unsuccessful claims that are unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all hours spent litigating the unsuccessful claims. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943; *Thorne*, 802 F.2d at 1141. In doing this, *Hensley* explains, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success [, and] [t]he court necessarily has discretion in making this equitable judgment." 461 U.S. at 436–37, 103 S.Ct. at 1941.

Essentially left to his own devices,[3] the experienced judge here crafted a formula to

---

3. As we explain in Part F, because Schwarz always maintained that she was entitled to all

identify and exclude the hours spent before Portland on the unsuccessful claims, based on the survival of one part of one claim out of four. The court then assumed that 25% of the hours expended by Schwarz's lawyers to that point were spent entirely on the one remaining claim and that all of these hours contributed to the ultimate success of the "glass ceiling" claim years later.

This approach is entirely consistent with the cases in which we have applied *Hensley* to hold that a district court does not abuse its discretion when it resorts to a mathematical formula, even a crude one, to reduce the fee award to account for limited success. In *Harris v. Marhoefer,* 24 F.3d 16 (9th Cir. 1994), for instance, we affirmed the district court's use of a flat 50% reduction to a merits fees award, which was based in part on "the number of claims prevailed upon versus the number of claims dismissed or decided in defendant's favor." *Id.* at 18. And in *Harris v. McCarthy,* 790 F.2d 753 (9th Cir.1986), we held that the district court did not abuse its discretion by awarding fees-on-fees in the same ratio that it had awarded merits fees, 11.5%, even though the court admittedly employed a "'rather cold mathematical approach.'" *Id.* at 759. In *Thompson v. Gomez,* 45 F.3d 1365 (9th Cir.1995), we relied on *Harris* and again held that it is within the district court's discretion to use a formula to reduce a fees-on-fees award. *Id.* at 1368.

Nor does *McGinnis v. Kentucky Fried Chicken of California,* 42 F.3d 1273 (9th Cir.1994), *amended and superseded,* 51 F.3d 805 (9th Cir.1994), upon which Schwarz relies, suggest a different result. Unlike this case, the district court in *McGinnis* was able to identify from the fee application the precise amount of attorney's fees incurred on the unsuccessful and unrelated claims (about 4%), and under *Hensley,* it then excluded that amount from the total fee award. 51 F.3d at 808. Likewise misplaced is Schwarz's reliance on the Third Circuit's recent decision in *Public Interest Research Group of New Jersey, Inc. v. Windall,* 51 F.3d 1179 (3rd Cir.1995), where the district court had lopped off 50% of the lodestar

following its entry of a preliminary injunction, on the theory that the plaintiff had achieved only "limited success" merely because it had obtained injunctive relief but failed to secure monetary relief. Our colleagues remanded for a more searching analysis of the results obtained, explaining that "[a] simple, mechanistic reduction based solely on the ratio of successful to unsuccessful *issues* is ... precluded by *Hensley*." *Id.* at 1190 (emphasis added). In *Windall,* the claims were not unrelated, and in any event, the district court here did not base its reduction on a comparison of the type of relief obtained versus the type of relief sought. If it had, it would have run afoul of the clear law in this Circuit as well. *See, e.g., Gates v. Deukmejian,* 987 F.2d 1392, 1404 (9th Cir. 1992) ("a district court should not reduce the lodestar merely because the prevailing party did not receive the type of relief that it requested").

We therefore conclude that having properly characterized the unsuccessful claims as unrelated, the district court correctly followed the mandate of *Hensley* to identify the hours Schwarz's attorneys spent litigating the dismissed claims, and to reduce the compensable hours accordingly. Given the circumstances, the court did not abuse its discretion by using a formula to approximate those hours.

**E**

▉ Schwarz argues that *Hensley* precludes partial success reductions in the face of an excellent result. She relies on the Court's statement that "[w]here a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee.... [which] should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. However, this rule has to do with *related* claims and to the situation where a plaintiff, who has achieved excellent results, has lost skirmishes along the way. As we have held, "[i]f the district court were to determine that the [unsuccessful] claims are unrelated, then

hours expended by her attorneys, she made no effort to identify for the district court which of

the hundreds of hours were spent on the unsuccessful claims.

*Hensley* prohibits an award of fees ... that includes work performed on the unsuccessful [claims]." *Thorne,* 802 F.2d at 1142 n. 12. *Cf. White v. City of Richmond,* 713 F.2d 458, 461–62 (9th Cir.1983) (confirming that "*Hensley* requires that the plaintiffs' award must be reduced if they failed to prevail on any claims that were unrelated to the claims on which they succeeded," but holding that district court didn't err by adjusting upward for complete success after deducting for hours that were unsubstantiated, unrelated or unreasonable). Accordingly, the fact that Schwarz achieved an excellent result on her one successful claim doesn't work to resurrect the hours her lawyers spent on the unsuccessful claims; under *Hensley,* the fee award cannot include those hours.

### F

■ Schwarz contends that we must reverse because the district court failed to explain denial of compensation for pre-Phoenix services, and inadequately explained halving of other awards. We decline to do so, given the fact that Schwarz's fee application contained "commingled and undifferentiated estimates of time that was spent productively in obtaining the Portland settlement [and] time spent unproductively floundering around in Phoenix and elsewhere." As the Court cautioned in *Hensley,* an attorney "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," 461 U.S. at 437, 103 S.Ct. at 1941, and no more than the Supreme Court will we " 'view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims,' " *id.* at 437 n. 12, 103 S.Ct. at 1941 n. 12 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978)).

■ In any event, *Hensley* 's requirement that the district court "provide a concise but clear explanation of its reasons for the fee award," *id.* at 437, 103 S.Ct. at 1941,

merely obliges the court "to give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review." *Gates,* 987 F.2d at 1398. The court is not "required to set forth an hour-by-hour analysis of the fee request[,] ... [and] when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Id.* at 1399 (internal quotations omitted).

Here, the court's detailed explanation of the unsuccessful and unrelated pre-Portland phase of the litigation suffices under *Hensley* as to most of the pre-Phoenix hours. As to the remainder,[4] and the halving of legal assistant and expert expenses, the district court offered an explanation sufficient to permit our meaningful review of the award, and this type of cut, even if not precisely explained, was well within the court's discretion under *Gates* in "trimming the fat" from the fee application.

### IV

■ Once it sets the number of reasonable hours, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *amended,* 808 F.2d 1373 (9th Cir. 1987). A district court should calculate this reasonable hourly rate "according to the prevailing market rates in the relevant community," *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), which typically is the community "in which the district court sits." *Davis v. Mason County,* 927 F.2d 1473, 1488 (9th Cir.), *cert. denied,* 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991). To set the reasonable hourly rate in this case, the district court followed this general rule and looked to the forum markets, Portland and Phoenix. Schwarz contends that there is a national market for this type of litigation because few

---

4. Approximately 11 hours, by our count.

lawyers are willing to take it on,[5] and that in any event the court should have based its award on the hourly rate either in New Jersey, where her lead counsel lives and works, or Washington, D.C., where she originally filed suit. We disagree.

## A

Schwarz acknowledges the general rule, but relies on a narrow exception we embraced in *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.1993). In *Gates*, we held that the district court did not abuse its discretion in awarding fees to San Francisco lawyers at San Francisco market rates—even though the forum district was Sacramento—where the plaintiffs had proven that "local counsel [in Sacramento] was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* at 1405. The plaintiffs in *Gates* "offered numerous declarations of San Francisco and Sacramento attorneys which directly support[ed] their contention that Sacramento attorneys and law firms with the requisite expertise and experience to handle this type of complex institutional prison reform litigation were unavailable," while the defendants responded with "patently frivolous" declarations swearing to the availability of Sacramento personal injury lawyers. *Id.* at 1405–06. However, just as it was within the district court's discretion in *Gates* to look to the prevailing market rate in the community in which the plaintiff's lawyer typically practices based on evidence that no qualified lawyer was available in the forum, it was within the court's discretion in this case, based on the record before it, to conclude otherwise.

■ Schwarz contends it is undisputed that she was unable to find counsel in the Portland and Phoenix markets, but her own declaration, which is the only evidence in support, shows no more than that Schwarz had difficulty in retaining a lawyer after her first lawyer declined to pursue the litigation and before Gross took the case (with co-

counsel). Gross's declaration shows no more than that the Portland and Phoenix local counsel who were retained to assist were unwilling to accept the case "alone." We cannot say that the district court abused its discretion by not concluding that all qualified lawyers in the Portland and Phoenix markets were unavailable. Consequently, it was well within its considerable discretion to apply Phoenix and Portland hourly rates.

## B

■ We do not agree with Schwarz that *Gluck v. American Protection Industries, Inc.*, 619 F.2d 30 (9th Cir.1980), or the Second Circuit's decision in *Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23 (2d Cir.1983), required the district court to apply Washington, D.C. rates because that is where she originally filed her lawsuit. In *Gluck*, the court held that the district court did not abuse its discretion by awarding fees to plaintiffs' attorneys for time spent unsuccessfully opposing a motion to transfer venue from Delaware to California, but there is nothing to indicate that the award approved in *Gluck* was based on Delaware rather than California rates. In any event, nothing said in *Gluck* requires a district court to base a reasonable hourly rate on fees in the place where the plaintiff originally filed suit. By the same token, *Polk*, which we cited in *Gates* only for the proposition that "rates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case," *Gates*, 987 F.2d at 1405, and in *Davis* for the general rule that "the relevant community is one in which the district court sits," *Davis*, 927 F.2d at 1488, simply recognizes that a district court has discretion to award fees based on where the suit was originally filed when "there is a *special circumstance*." *Polk*, 722 F.2d at 25 (emphasis added). In that case, suit was originally filed in a district where a related class action was pending but was trans-

---

5. We decline to address this "national market" issue because Schwarz raised it for the first time in her reply brief. *In re Estate of Ferdinand E.* *Marcos Human Rights Litig.*, 978 F.2d 493, 495 n. 2 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2960, 125 L.Ed.2d 661 (1993).

ferred for lack of venue. We express no view on how we would treat such a "special circumstance," because it is clear that there was none here. We therefore conclude that the district court did not abuse its discretion by declining to apply the prevailing hourly rates in the District of Columbia.

V

Looking to the forum markets, Portland and Phoenix, the district court concluded that a reasonable hourly rate for Schwarz's counsel is $150/hour, and that her lead counsel should receive an enhanced rate of $200/hour. Schwarz argues that the record does not support the base figure, and that instead the record establishes that the prevailing market rate is $250/hour ($300/hour for lead counsel) in Phoenix and $200/hour ($250/hour for lead counsel) in Portland. We disagree.

■ Once the district court sets the compensable hours, it "must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers,* 796 F.2d at 1210. This determination "is not made by reference to rates actually charged the prevailing party." *Id.* Rather, the court "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210–11. And "[e]ither current or historical prevailing rates may be used [, although] [t]he use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable." *D'Emanuele v. Montgomery Ward & Co., Inc.,* 904 F.2d 1379, 1384 (9th Cir.1990).

■ To inform and assist the court in the exercise of its discretion, "[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir.1987) (citing *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11). In light of this burden, we see no abuse of discretion.

■ Schwarz's evidence consisted of a declaration from one member of the Arizona bar, which does not indicate that the rates sought were comparable to her rates, or whether the rate might be different depending on the type of case, *see Jordan,* 815 F.2d at 1263 n. 9 (criticizing an almost identical declaration submitted in support of an hourly rate), and a couple of published surveys of ranges of fees charged by various law firms based in Seattle, Washington, and other cities across America. These surveys, however, told the district court nothing about the prevailing rate in Portland or Phoenix for similarly qualified lawyers working on a similar type of case.

The Secretary presented an August 1991 declaration of a qualified Portland civil rights lawyer whose hourly rate was $165/hour and who had obtained a $150/hour (plus a ⅓ multiplier) in a recent case. The Secretary also cited to several Arizona fee awards in published cases. While the Secretary's evidence did not compel the district court to choose the $150/hour rate, it did provide a sound basis for that award.

We reject Schwarz's suggestion that she need not produce such evidence because Gross has a "track record." While an attorney's prior fee award may bear on the selection of a reasonable fee in a later case, particularly when the award was for work performed in the relevant community, simply offering the prior award is not enough. The prevailing party still must come forward with the evidentiary support required by *Jordan,* without regard to the experience of her lawyer. This is especially true when, as here, the attorney's track record is not in the relevant community.

■ Schwarz also suggests that we reverse on the ground that the district court failed to account for inflation in its choice of hourly rates. However, we have held that an "[a]djustment for inflation is not required in every case [, and that] the question for the district court is the reasonableness of the fee in light of the totality of the circumstances and the relevant factors, including delay in payment." *Jordan,* 815 F.2d at 1262 n. 7. Here, the fee is not unreasonable whether it reflects historical or current rates in light of

the fact that the hours spent on the productive Portland phase of the litigation weren't all that old.

## VI

◼ The district court reduced by 50% the fees and expenses requested by Schwarz for so-called "fees-on-fees" litigation. Schwarz maintains that this was an abuse of discretion because the court never should have made the reduction in the first place, and even if it should have, it had to offer a better explanation for doing so. We disagree with both arguments.

In *Comm'r, I.N.S. v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), the Supreme Court, in explaining how district courts should apply *Hensley* to requests for fees-on-fees, said that "[b]ecause *Hensley* . . . requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Id.* at 163 n. 10, 110 S.Ct. at 2321 n. 10. Twice, once before and once after *Jean,* we have held that a district court does not abuse its discretion by applying the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award. *Harris,* 790 F.2d at 759 (because plaintiffs received only 11.5% of the merits fees they sought, court properly awarded 11.5% of plaintiffs' requested fees-on-fees); *Thompson,* 45 F.3d at 1368 (same, but percentage was 87.5%).

Applying *Harris* and *Thompson* here, the district court was well within its discretion in awarding 50% of the fees-on-fees requested because this ratio actually exceeded the percentage by which Schwarz prevailed on her request for merits fees.

◼ We also reject Schwarz's contention that the court failed to provide an adequate explanation of its fees litigation award. The district court found that "[n]ot only are the hours claimed in litigating the fee award excessive, but counsel failed to document with any degree of accuracy productive work and unproductive churning, which resulted in an unnecessarily painstaking examination of

the record." Further, both *Harris* and *Thompson* confirm that a district court can apply a percentage formula to reduce the fees-on-fees requested without providing an additional explanation for its actions, since it already has provided a "concise but clear explanation of its reasons for the [merits] fee award" and that same explanation underlies and supports the decision to award fee-on-fees in the same (or, as here, about the same) percentage. The court need not repeat that explanation to facilitate a meaningful appellate review. As we already have concluded that the district court here gave a sufficient explanation of its reasons for the merits fee award, that same explanation suffices as to the fees litigation award.

## VII

◼ Schwarz seeks attorney's fees for work performed on this appeal, and prejudgment interest from the date of the district court's judgment on the additional fees and expenses she sought on this appeal. We may award fees for work done on a successful appeal of a district court's award, but not for an unsuccessful one. *Thompson,* 45 F.3d at 1368–69. Because we award no additional fees and expenses, there is nothing to which we can apply prejudgment interest.

AFFIRMED.