Christine A. CUMMINGS,
et al., Plaintiffs,

v.

Kathleen CONNELL, Controller, State of California, et al., Defendants.

No. CIV.S–99–2176 WBS/DA.

United States District Court,
E.D. California.

Oct. 17, 2001.

one-half percent of full union dues (total fee for nonmembers).

Dylan Bradley Carp, Kirkpatrick and Lockhart LLP, San Franciso, CA.

W. James Young, National Right to Work Legal Defense Foundation Inc., Springfield, VA.

Christopher C. Foley, Lesle R. Lopez, Atty. General's Office of the State of California, Los Angeles, CA.

Warren Curtis Atracener, Cal. Dept. of Personnel Admin., Sacramento, CA.

Harry J. Gibbons, Jr., Anne Maria Giese, Cal. State Employees Ass'n, Sacramento, CA.

Jeffrey Brian Demain, Altshuler, Berzon, Nussbaum, Rubin and Demain, San Franciso, CA.

## MEMORANDUM AND ORDER

SHUBB, District Judge.

Plaintiffs Christine A. Cummings, et al. move for attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Plaintiffs request fees and costs in the amount of $234,891.33. Defendants object, seeking to reduce the award to $23,592.39.

### I. *Factual and Procedural Background*

This suit was brought as a class action pursuant to 42 U.S.C. § 1983 on behalf of employees of the State of California. Plaintiffs, who are nonunion members, alleged that defendant California State Employees Association, Local 1000 ("CSEA") was improperly withholding agency fees from their paychecks without providing them with the procedural safeguards mandated by *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The fees were withheld pursuant to collective bargaining agreements that included a provision for the state to deduct and forward to CSEA "fair share" fees for non-member employees in CSEA-represented bargaining units. The "fair share" purportedly represented the non-members' share of the cost of collective bargaining.

Plaintiffs filed their complaint and moved for a preliminary injunction in November 1999, claiming that notices sent by CSEA in April and June 1999 regarding the "fair share" deductions were constitutionally inadequate. On December 20, 1999, this court granted plaintiffs' motion for a preliminary injunction. Specifically, this court ordered that upon the posting of a security bond, "defendants ... shall be enjoined from seizing agency fees from plaintiffs or any member of the represented class until defendants have provided such plaintiff or member of the class with a copy of the auditor's report and the appropriate documentation."[1] (December 20, 1999 order at 24:8–16).

Defendants mailed a copy of the auditor's report to the "fair share" fee payers in January 2000. On January 19, 2000, plaintiffs moved for a temporary restraining order ("TRO") and/or a preliminary injunction, challenging, among other things, the deadline set by defendants for plaintiffs to object to the notice. This court denied the TRO motion, on the condition that defendants would provide an adequate notice referencing the Audit and an extension of the deadline to object. On January 25, 2000, the Controller's Office mailed an amended notice which referenced the Audit and extended the deadline. The court heard plaintiffs' January 19, 2000 motion as a preliminary injunction on February 23, 2000, and denied the motion. In May 2000, CSEA mailed a notice to fee payers which the parties agreed was constitutionally adequate under *Hudson.*

In February 2001, plaintiffs moved for summary judgment on the adequacy of the April, June, and January notices, as well as the validity of the indemnification provision contained in the collective bargaining

---

**1.** The June notice included the "1998 Expenditure Report," which was based on an independent audit ("Audit") of CSEA's 1998 financial records. Defendants did not provide an actual copy of the Audit with the April or June notices.

agreements between the State of California and CSEA. Plaintiffs argued that non-union members were entitled to full restitution of deductions made prior to May 2000, and in the alternative requested that the court "adjudicate the appropriately chargeable fee," and award restitution of the non-chargeable deductions. The court treated plaintiffs' alternative request as a challenge to the propriety of the "fair share" fee calculated in the May notice.

Defendants filed a cross motion for summary judgment on the grounds that the June and January notices were adequate as a matter of law; that plaintiffs did not suffer compensable harm, and if they did, their challenges to CSEA's expenditures were meritless; and that plaintiffs did not have standing to challenge the indemnification provision.[2]

On May 2, 2001, this court granted plaintiffs' motion for summary judgment with respect to the April, June, and January notices. The court granted defendants' motion with respect to the propriety of the "fair share" fee and plaintiffs' standing to challenge the indemnification provision. The court awarded partial restitution to plaintiffs based on CSEA's calculation of the non-chargeable portion of the "fair share" fee.[3] An amended judgment was entered on July 31, 2001, modifying the restitution award to reflect the adjustment made by CSEA in fees collected from non-members from January 2000 through April 2000. The court ordered CSEA to "return to all plaintiffs who paid any 'fair share' fees from April 1999 through April 2000, and who have not yet received an equivalent refund, twenty percent of regular membership dues at the

fee-payer's salary level from April 1999 to December 1999, and fifteen and one-half percent of regular membership dues at the fee-payer's salary level from January 2000 through April 2000, with interest." (July 31, 2001 order at 8:21–9:5).

## II. *Discussion*

■ Pursuant to 42 U.S.C. § 1988, a court may award reasonable attorneys' fees to a plaintiff who is a "prevailing party" in a civil rights action. *Texas State Teachers Assoc. v. Garland Independent School Dist.,* 489 U.S. 782, 788, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). A "prevailing party" is one who succeeds on any significant issue in litigation, achieving some of the benefit sought in bringing the suit, and resulting in a "material alteration of the legal relationship of the parties." *Id.* at 792–93, 109 S.Ct. 1486. Defendants concede that plaintiffs are prevailing parties in the litigation, but dispute the amount of attorneys' fees that should be awarded.

■ The Ninth Circuit has adopted the "lodestar" method to for calculating attorneys' fees. To determine the appropriate fee amount, the court multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Widrig v. Apfel,* 140 F.3d 1207, 1209 (9th Cir.1998) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). There is a strong presumption that the lodestar amount is reasonable. *Harris v. Marhoefer,* 24 F.3d 16, 18 (9th Cir.1994). However, the court may adjust the lodestar figure if various factors overcome the presumption of rea-

2. Defendants previously filed a motion for summary judgment in July 2000. The court denied that motion without prejudice to allow plaintiffs to complete discovery.

3. The court ordered CSEA to "return to all plaintiffs who paid 'fair share' fees for the

1999 fee-payer year, and who have not yet received an equivalent refund, twenty percent of regular membership dues at the fee-payer's salary level for the 1999 fee-payer year, with interest." (May 2, 2001 order at 25:3–7).

sonableness.[4] *Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933; *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir.1996).

■ The parties agree that plaintiffs did not obtain all of the relief sought in their complaint, but dispute the extent of plaintiffs' success in the litigation as a whole. (CSEA's Opp. at 1–2, Pls.' Reply at 3). A critical factor in the court's determination of an appropriate fee award is the extent of a plaintiff's success, measured by the "results obtained" in litigation. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The Supreme Court has considered this factor "particularly crucial" where a plaintiff is deemed "prevailing" even though he did not succeed on all claims for relief. *Id.*

### A. Reasonable Number of Hours Expended

Defendants argue that the court should reduce the reasonable number of hours expended from 687.05 to 94.5 hours to reflect plaintiffs' limited success. (CSEA's Opp. at 6–11). Defendants arrive at this figure by the following calculations: (1) subtracting 188.35 hours devoted to discovery on plaintiffs' challenge to CSEA's calculation of the "fair share" fee ("chargeability claim"); (2) subtracting 26.1 hours to reflect time expended briefing the chargeability issue; and (3) and reducing the remaining hours by 80% to account for plaintiffs' attainment of limited equitable and monetary relief.

■ The Ninth Circuit has instructed district courts to follow a two-part analysis in cases in which a plaintiff's success is limited. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.1986). "First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims." *Id.* (citing *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933). Where the claims are related, the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* If the plaintiff obtained "excellent results," full compensation may be appropriate. However, full compensation "may be excessive" if there was only "partial or limited success." *Id.* (internal quotations omitted).

### 1. Relatedness of Claims

■ Defendants argue that plaintiffs' successful challenge to the constitutional adequacy of the *Hudson* notice (plaintiffs' "notice claim") was unrelated to their unsuccessful chargeability claim, and urge the court to subtract hours devoted to the chargeability issue. Claims are considered unrelated if they are " 'distinctly different claims for relief that are based on different facts and legal theories.' " *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 902 (9th Cir.1995) ("[C]laims are

---

**4.** The court may adjust the lodestar figure on the basis of the *Kerr* factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the

case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Morales*, 96 F.3d at 363 n. 8. (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975)). Many of the *Kerr* factors have been subsumed in the lodestar approach. *Id.* (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir.1988)). Moreover, the court should consider the factors established by *Kerr*, but need not discuss each factor. *Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir.1983).

related if they 'involve a common core of facts or [are] based on related legal theories.' ") (quoting *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933). In examining relatedness of claims for the purpose of determining attorneys' fees awards, the Ninth Circuit has focused on whether unsuccessful and successful claims arose out of the same "course of conduct" and whether some of the work performed on the unsuccessful claim aided work done on the merits of the successful claim. *Id.* at 903.

Defendants cite *Knight v. Kenai Peninsula Borough School Dist.*, 131 F.3d 807, 813–14 (9th Cir.1997), in support of their contention that plaintiffs' notice and chargeability claims are factually and legally unrelated. (Defs.' Opp. at 4). The Ninth Circuit stated in *Knight* that "[t]here is a 'clear distinction between the adequacy of a union's notice, addressed by the Supreme Court in *Hudson*, and the propriety of a union's chargeability determinations, considered separately by the Supreme Court in *Lehnert v. Ferris Faculty Association*, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991).' " *Id.* (alteration in original) (citations omitted).

Plaintiffs dispute defendants' characterization of their lawsuit, arguing that defendants "confuse the damages calculation on claims brought pursuant to [Hudson] ... with a distinct lawsuit." (Pls .' Reply at 2). Plaintiffs contend that the chargeability issue, namely the determination of chargeable versus non-chargeable portions of the "fair share" fee, is necessary for a calculation of damages where there has been a *Hudson* violation. Thus, plaintiffs argue, the chargeability issue is inseparable from the notice issue in the context of their claim for relief.

█ In the May 2001 order, the court ordered partial restitution to plaintiffs after finding that CSEA's notices did not satisfy procedural safeguards required by *Hudson.* (May 2, 2001 order at 14). Af-

ter examining plaintiffs' challenges to certain CSEA expenditures, the court ultimately rejected plaintiffs' challenge to CSEA's chargeability determination and granted defendants summary judgment on the propriety of the fee. The partial restitution award was based on CSEA's calculations of the non-chargeable portion of the fee. However, although plaintiffs were unsuccessful on their chargeability claim, their work on this issue did provide some evidentiary basis for the court to determine the extent of relief to be granted. In light of Ninth Circuit authority, the court finds that the work performed on the unsuccessful chargeability challenge aided the work done on the merits of the successful *Hudson* challenge, particularly by assisting the court in fashioning the relief granted to plaintiffs. The court therefore rejects defendants' argument that the notice and chargeability claims are factually and legally unrelated and concludes that excluding all hours devoted to the chargeability claim would be inappropriate.

### 2. *Reduction In Hours Expended*

█ The Supreme Court has emphasized that a district court has discretion to determine the amount of a fee award. *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. Where plaintiffs have obtained relief that is "limited in comparison to the scope of the litigation as a whole," a reduced fee award that is "reasonable in relation to the results obtained" is appropriate *Id.* at 440, 103 S.Ct. 1933. The Ninth Circuit has approved the use of "a mathematical formula, even a crude one, to reduce the fee award to account for limited success." *Schwarz*, 73 F.3d at 904–905 (affirming court's use of mathematical formula to reduce fee award; district judge declined to award fees for hours spent on unrelated unsuccessful claims); *Marhoefer*, 24 F.3d at 17 (affirming court's 50% reduction of lodestar figure based on plain-

tiff's partial success in litigation); *Harris v. McCarthy*, 790 F.2d 753, 757–59 (9th Cir.1986) (finding that district court did not abuse discretion by reducing by approximately two-thirds the number of hours plaintiffs declared were expended in securing preliminary injunction, and awarding 11.5% of requested fees-on-fees award).

In the instant case, plaintiffs prevailed upon the following in the course of litigation: 1) the court granted plaintiffs' initial motion for certification and a preliminary injunction; 2) the court granted plaintiffs summary judgment on the adequacy of the April, June, and January notices; and 3) the court awarded partial restitution to plaintiffs totaling approximately $3 million.[5] Plaintiffs did not prevail on the following motions and issues: 1) the court denied plaintiffs' TRO and second motion for a preliminary injunction;[6] 2) the court granted defendants' summary judgment on the chargeability issue, i.e. plaintiffs' challenge to the propriety of the "fair share" fee; 3) the court denied permanent injunctive relief to plaintiffs; and 4) the court granted summary judgment to defendants on plaintiffs' challenge to the indemnification provision.

Clearly, while plaintiffs launched a successful challenge to the adequacy of the *Hudson* notices, defendants also prevailed on a number of significant issues throughout the course of litigation. The court finds that the requested fees must therefore be reduced to reflect plaintiffs' limited success. The court rejects plaintiffs' contention that their "success here is the kind of 'excellent result' justifying an award of all their fees." (Pls' Reply at 3). Rather, the court concludes that the fees award should be reduced in a manner reflecting a partial reduction of time expended on the unsuccessful claims and the limited relief obtained.[7]

Plaintiffs' time records do not indicate exactly how much time was spent on particular issues at each stage of the litigation. *See Schwarz*, 73 F.3d at 906 ("[A]n attorney should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'") The Ninth Circuit has noted that it will not "view with sympathy" claims that a district court abused its discretion in awarding unreasonably low attorneys' fees where the record does not provide a proper basis for determining time spent on specific

5. Defendants offer evidence that plaintiffs' claim for full restitution amounts to $14 million in damages, whereas only $3 million in relief was actually obtained. (CSEA's Opp. at 8).

6. The Ninth Circuit recognizes that if "a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim-even though she may have suffered some adverse rulings." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir.1991). Although the TRO and second preliminary injunction motion were denied, plaintiffs did ultimately prevail on their challenge to the adequacy of the *Hudson* notices.

7. "[I]t remains important ... for the district court to provide a concise but clear explana-

tion of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. "When an adjustment is requested on the basis of ... the limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* The Ninth Circuit has interpreted the *Hensley* "concise but clear" language as requiring the district court to give "at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992) (noting that percentage or 'meat-axe approach' has been criticized when used in cases involving large fee requests and where courts "failed adequately to articulate their reasons for selecting specific percentage deductions").

claims. *Id.* (citations and internal quotations omitted).

■ From the court's review of plaintiffs' billing records, it appears that approximately 50% of the hours expended by plaintiffs' counsel were expended in pursuit of the successful *Hudson* notice challenge.[8] The court arrives at this figure by considering the time plaintiffs' counsel expended on work related to the complaint, preliminary injunction and class certification motions, in addition to time expended briefing the issue in preparation for the summary judgment motions. However, the court takes into account that only partial restitution based on CSEA's calculation of the "fair share" fee was granted, an award that is substantially short of the full restitution sought by plaintiffs. As a result, the court reduces the hours expended on the *Hudson* notice claim to 35% of claimed hours, or 240 hours, to account for the limited success plaintiffs achieved overall.[9]

Plaintiffs' billing records reflect that the other half of claimed hours were divided among the remaining claims in the litigation, including discovery primarily focused on the chargeability issue, briefing related to the chargeability issue,[10] and time expended in connection with plaintiffs' challenge to the indemnification provision. As discussed above, the court finds that plaintiffs' work on the chargeability issue did provide some basis for the court's determination of appropriate relief.[11] However, a full fee award for hours expended on this claim would be clearly excessive given that the court ultimately rejected plaintiffs' claims in connection with this issue. Therefore, the court adds 10% of hours dedicated to discovery and briefing in connection with the chargeability claim, or 21 hours, to the reasonable hour component of the lodestar figure.[12]

8. The court bases its calculations on plaintiffs' counsel's adjusted hours. (Pls.' Petition at 6).

9. Plaintiffs were awarded partial restitution of only $3 million in contrast to the $14 million in full restitution that plaintiffs sought. If the court only considered the extent of plaintiffs' success in terms of monetary relief, the court would reduce the hours by 79% and award fees for only 21% of hours claimed. Instead, the court arrives at the 35% figure by blending the hours expended on the *Hudson* issue (approximately 50% of claimed hours) and the relief obtained (approximately 21% of the relief sought). The Ninth Circuit has affirmed an attorneys' fees determination based on this reasoned analysis, namely the court's consideration of "the amount of damages recovered versus the amount sought, and the number of claims prevailed upon versus the number of claims dismissed or decided in defendant's favor." *Marhoefer,* 24 F.3d at 18.

10. Defendants estimate that 26.1 hours were expended by plaintiffs' counsel in briefing the chargeability issue. Defendants arrive at this figure by finding that 15% of the pages in plaintiffs' summary judgment briefs related to this claim, and that 26.1 hours constitute 15% of the 173.9 total hours spent by plaintiffs' counsel briefing summary judgment.

(CSEA's Opp. at 7–8). Because plaintiffs do not provide the court with a better method for calculating the time expended on briefing the chargeability issue, the court accepts defendants' formula.

11. Defendants urge the court to subtract all 188.35 hours dedicated to discovery, arguing that "plaintiffs were singularly unsuccessful on their challenge to CSEA's calculation of the fair share fee." (CSEA's Opp. at 6). Moreover, defendants note that in a September 11, 2000 hearing, the court made the following statement: "If I decide that all of this discovery from now on was aimed at issues that really aren't in the case, then we're going to segregate that out, and I'm not going to give him attorney's fees for it." *Id.* However, an examination of the litigation as a whole indicates that issues relating to the propriety of the "fair share" fee intersected with plaintiffs' notice claim in the context of the court's determination of appropriate relief. Thus, the court declines to flatly eliminate all hours claimed for discovery.

12. The court arrives at this figure by adding the 188.35 hours dedicated to discovery to 26.1 hours expended in briefing the chargeability issue. The court multiplies the 214 hours by 10% to arrive at 21 hours.

In light of the foregoing discussion, the court reduces the 687.05 hours declared by plaintiffs' counsel to 261 hours [13], a 62% reduction in hours claimed.[14] *See Gates,* 987 F.2d at 1404 ("[T]he favored procedure is for the district court to consider the extent of the plaintiff's success in making its initial determination of hours reasonably expended at a reasonable rate, and not in subsequent adjustments to the lodestar figure.").

Moreover, plaintiffs' counsel claims 16.75 additional hours for work associated with the attorneys' fees petition. (Young Supp. Decl. at 3). The court reduces these hours by the same percentage, 62%, to reflect the percentage of merits fees recovered. Plaintiffs' counsel may recover 6.4 hours, or 38% of hours expended in connection with the petition. *See Thompson v. Gomez,* 45 F.3d 1365, 1367–68 (9th Cir.1995) (finding that district court acted within its discretion in reducing fees-on-fees award in accordance with reduction of merits fees award).

## B. *Reasonable Hourly Rate*

 Having determined the reasonableness of the hours claimed by plaintiffs' counsel, the court turns to the reasonableness of the claimed hourly rate. The court looks to the "prevailing market rates in the relevant community," *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v.*

*City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986); *see also Stenson,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541 ("[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community."). The relevant community is generally the forum in which the district court sits. *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir.1997).

 Plaintiffs' counsel requests reimbursement at rates of $275 to $300 per hour.[15] Defendants argue that plaintiffs counsel's hourly rate should be reduced to $200 per hour for the following reasons: 1) plaintiffs' counsel negotiated a settlement in a San Francisco case last year, and that settlement compensated him at the rate of $250 an hour; 2) San Francisco rates are generally higher than rates in Sacramento; 3) one of plaintiffs' declarants, a civil litigation attorney, bills $350 per hour, but has 22 years of experience, compared to plaintiffs' counsel's 12 years of experience; 4) plaintiffs' counsel was sanctioned by the court in the course of this litigation.

 In 1997, the Ninth Circuit affirmed a district court's determination that $200 per hour was a reasonable rate for work performed by a civil rights practitioner in Sacramento. *Barjon,* 132 F.3d at 502. However, the work in the litigation at issue in *Barjon* was performed in 1993 and 1994, whereas the work in this case was performed between 1999 and 2001. Moreover, defendants do not submit satis-

---

**13.** The court arrives at 261 hours by adding the 240 hours attributed to the *Hudson* claim to 21 hours associated with work on the chargeability issue.

**14.** The Ninth Circuit has cautioned that although "we do not require an elaborately reasoned, calculated or worded order . . . [and] a brief explanation of how the court arrived at its figures will do . . . something more than a bald unsupported amount is nec-

essary." *Gates,* 987 F.2d at 1398 (internal quotations omitted). Hopefully, the Ninth Circuit will find the foregoing explanation sufficient.

**15.** Plaintiffs' counsel requests reimbursement at the following rates: 1) $275 per hour for work performed from June 1999 to June 2000; 2) $290 per hour for work performed from July 2000 to June 2001; 3) $300 per hour for work performed after July 2001.

factory evidence disputing the declarations submitted by plaintiffs' counsel, which state that the prevailing hourly rate for Sacramento-based attorneys with comparable years of experience range between $225 and $325 per hour. After considering plaintiffs' counsel's legal experience, his submitted declarations, and his compensation in the recent San Francisco-based case, the court determines that the prevailing hourly rate in the Sacramento area for similar work performed by attorneys of comparable skill, experience and reputation is $250. The court calculates the lodestar figure based on this hourly rate.[16]

## C. Attorney Out-of-Pocket Expenses

Plaintiffs request that the award include attorneys' out-of-pocket expenses in the amount of $33,361.38.[17] These costs include travel, telephone charges, photocopying, transcript fees, and other expenses associated with the litigation. Costs that are normally charged to a fee-paying client in the course of providing legal services are recoverable under section 1988. *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir.1982), *remanded on other grounds*, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983)). These include reasonable photocopying, travel, and telephone costs. *Id.; see also Marhoefer*, 24 F.3d at 20 (concluding that expenses related to discovery including those incurred in depositions are recoverable expenses as part of reasonable attorney's fees); *Roe v. Saenz*, No. CIV–S–97–

0529, 2000 WL 33128689, at *4 (E.D.Cal. Nov.20, 2000) (citing *Chalmers*, 796 F.2d at 1216 n. 7).

Defendants argue that plaintiffs should not be compensated for costs and expenses associated with discovery related to the chargeability claim, for the same reasons defendants put forth in disputing an award of fees for hours expended in pursuit of this claim. (CSEA's Opp. at 13). However, because these are reasonable expenses that would normally be charged to a fee-paying client, the court concludes that plaintiffs may recover all costs associated with discovery.[18] *See Marhoefer*, 24 F.3d at 19 (affirming district court's award for costs pursuant to section 1988; district court awarded full amount sought for costs, while reducing lodestar figure by 50% to reflect plaintiffs' limited success).

Defendants contend that plaintiffs should receive reduced compensation for claimed expenses associated with travel, arguing that expenses incurred by plaintiffs' counsel for airfare, lodging, meals, and incidental expenses are excessive and unreasonable. (CSEA's Opp. at 14). However, defendants have not submitted evidence showing that plaintiffs' counsel could have obtained more economical fares and hotel reservations at the time that he made the arrangements. The court also takes into account the fact that at the time that plaintiffs' counsel made his travel arrangements, he did not know if he would recover attorneys' fees, and thus assumed

---

16. "We have long recognized that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406.

17. Plaintiffs requested $33,893.64 in out-of-pocket expenses in their petition, but later

reduced the requested amount by $532.26. (Pls.' Reply at 14–15).

18. The court has found no case law, and none is cited in the briefs, suggesting that out-of-pocket costs should be cut down to reflect limited success on the merits in cases involving related claims.

the risk of incurring these expenses. In the absence of evidence to the contrary, the court applies the presumption that plaintiffs' counsel paid fair market value for expenses associated with travel, and may be reimbursed for these costs.

However, in reviewing the expense reports and receipts submitted by plaintiffs' counsel, the court disallows recovery of the following expenses totaling $650.35: 1) $8.95 for movies incurred at the Hyatt Regency on 1/3/00; 2) $15.99 for movies incurred at the Hyatt Regency on 2/23/00; 3) $225.41 for Business Center expenses at the Hyatt Regency on 2/24/00; these appear to be incurred in connection with another case; 4) $150 for airline upgrade certificates purchased on 2/24/00; these are simply for the convenience of counsel and not necessary for travel; and 5) $250 for airline upgrade certificates purchased on 3/24/01.

### D. *Defendants' Liability*

In the May 2001 order, this court concluded that plaintiffs lacked standing to bring their claims against defendants Connell and Morgenstern. (May 2, 2001 order at 4–5 n. 3). A party who lacks standing to bring a claim cannot be deemed a prevailing party for the purpose of an attorneys' fees award. *See Martinez v. Wilson,* 32 F.3d 1415, 1422 (9th Cir.1994). Thus, this court's award of attorneys' fees runs only against defendant CSEA.

### III. *Conclusion*

Based on the foregoing discussion, plaintiffs will be awarded the following amounts:

19. The court does not compensate plaintiffs' counsel for travel expenses associated with oral argument on this petition, because he

| | | |
|---|---|---|
| A. | 261 hours on merits @ $250/hour | = $65,250 |
| | (687.05 hours × .38 = 261 hours) | |
| B. | 6.4 hours on fee motion @ $250/hour | = $ 1,600 |
| | (16.75 hours × .38 = 6.4 hours) | |
| C. | Attorney Out-of-Pocket Expenses | = $32,711.03 |
| | ($33,361.38—$650.35) | |

TOTAL = $99,561.03

IT IS THEREFORE ORDERED that plaintiffs' motion for attorneys' fees and costs be, and the same hereby is, GRANTED in the amount of $99,561.03.[19]

declined the court's invitation to appear by phone.