UNITED STATES of America,
Plaintiff–Appellee,

v.

Miles A. GALIN, Defendant

Robert E. Goldman, Contemnor–Appellant.

No. 99–50356.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2000

Filed Aug. 23, 2000

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, D.C., for the contemnor-appellant.

Sangita K. Rao, Department of Justice, Washington, D.C., for the plaintiff-appellee.

Mark D. Hopson, Sidley & Austin, Washington, DC, for the amicus curiae.

Before: SCHROEDER, T.G. NELSON, and WARDLAW, Circuit Judges.

PER CURIAM:

This is an appeal from an order of criminal contempt against a criminal defense attorney from New York who repeatedly violated the ground rules the district court had laid down for the conduct of a jury trial. The principal legal issue the attorney raises, and amicus National Association of Criminal Defense Lawyers (NACDL) supports, is that obstruction of justice is a prerequisite to criminal contempt against an attorney defending a criminal defendant. Because this interpretation is not supported by the applicable statute, 18 U.S.C. § 401(3), or by applicable case law, *see, e.g., United States v. Thoreen,* 653 F.2d 1332 (9th Cir.1981), and because the record reflects that the violation of the court's orders in this case was knowing and intentional, we affirm.

The attorney, appellant Robert Goldman, was defending Miles Galin in the case of *United States v. Galin,* No. CR–96–00885–SVW (C.D. Cal. filed Sept. 27, 1996), *aff'd,* 217 F.3d 847 (Table), 2000 WL 554266 (9th Cir. May 5, 2000). During a pretrial conference the district court first noted that Mr. Goldman was from outside the Central District of California and then explained the court's practices. These practices included requiring counsel to argue to the jury from the lectern rather than from the well of the courtroom and to state the legal ground for an objection without arguing the point. The court said:

> Lawyers, and I say this because I know you are out [of] the district and it's hard to know the practices of a Court when you are not regularly appearing in that Court, lawyers are expected to argue from the lectern. If you have need to depart from the lectern, you are to ask leave of Court.
>
> When you make an objection, make the objection, state the legal grounds and don't argue the objection. If it's important, you can always ask permission to approach the side bar, although I frown upon that, I don't like side bar conferences, or we can argue it at recess. I prefer to argue matters that were ruled upon that counsel think may need reargument at the recess.
>
> I don't want lawyers talking to each other certainly. I want the procedure to be dignified and not an exercise in combat.

Tr. of 6/12/98 Pretrial Conference at 3.

During the course of the trial, Judge Wilson made it clear that he would not permit an objecting attorney to offer argument beyond making the objection and stating the legal basis for it. Similarly, he would not permit an attorney offering objectionable evidence to argue a basis for the evidence after an objection had been sustained. During cross-examination of the government's first witness, when Goldman tried to provide a basis for a question objected to by the government, Judge Wilson told Goldman, "I told you not to argue objections." Trial Tr., Vol. 1 at 18. Numerous admonishments followed. For example, a little later in the proceedings Judge Wilson responded to an objection made by Goldman by stating, "I've asked

you please to make legal objections and if further argument is necessary I'll invite it or you can request it. Make the objection, let me rule and let's please follow that process." *Id.* at 24–25. Later in the trial, after Goldman persisted in arguing a point, the court stated:

Mr. Goldman, you know, as I said before, I certainly admire the zeal in [sic] which you have represented your client, but I told you that it is improper to argue before the jury unless I invite it. And you've argued an objection before the jury. That's inappropriate and contrary to my rules. And I don't want you to do it again. When I rule, I have ruled.

Trial Tr., Vol. 3 at 51. The record is replete with other examples. *See, e.g., id.* at 56 ("Don't argue the objection."); Trial Tr., Vol. 4 at 88 ("I asked you not to argue in front of the jury again."); *id.* at 155 ("Please don't argue objections in front of the jury. Please don't do it."); *id.* at 157 ("Respectfully, Mr. Goldman, just 30 seconds ago I asked you please not to argue evidentiary rulings."); *id.* at 180 ("Can't you please follow my admonition and not argue objections? I've ruled."); Trial Tr., Vol. 5 at 17 ("I keep asking you not to argue objections."); *id.* at 62 ("I asked you not to argue objections. The court has ruled. Move on."); *id.* at 85 ("I'm not inviting this argument in front of the jury."); Trial Tr., Vol. 6 at 93 ("I keep admonishing you not to argue in response to an objection.").

Judge Wilson also admonished Goldman on several occasions for failing to remain at the lectern and entering the "well" of the court, and for raising his voice, waving documents, pointing, interrupting the court, and criticizing the court's rulings. *See, e.g.,* Tr. of 6/16/98 Hearing at 8 ("You know something; if we are going to be here for a week or so, I'm not going to tolerate your shouting into the microphone.... So modulate your voice and don't sound contentious and argumentative because your personality is irrelevant to these proceedings."); Trial Tr., Vol. 1 at 21 ("Don't approach the witness and please stay out of the well."); Trial Tr., Vol. 2 at 150 ("Keep your voice down. Can't you modulate your voice?"); Trial Tr., Vol. 3 at 28 ("Mr. Goldman, don't walk around in the well of the courtroom."); *id.* at 138 ("Don't yell at the witness."); *id.* at 251 ("Stop screaming. You are yelling at him."); Trial Tr., Vol. 4 at 25 (during a sidebar: "You're speaking too loudly. You are again speaking so loudly the jury [can] hear you."); *id.* at 27 ("Let me finish—[Goldman interrupts] Let me finish my point and we will proceed."); *id.* at 28 ("You don't allow me to complete my thoughts. You keep saying, 'No. No.'"); *id.* at 35 ("You are not letting me complete my thought.") *id.* at 44–45 ("Mr. Goldman, once again you shouted, pointed your finger four or five times at the jury and at the witness.... I implore you, please don't disregard my instructions. Please don't shout and point your finger at the witness."); *id.* at 158 (during a sidebar: "Mr. Goldman, please don't argue so loudly so the jury can hear."); Trial Tr., Vol. 5 at 86 ("Please don't march around the courtroom. Position yourself near or at the lectern. I have asked you to do that several times. Please comply with my order."); *id.* at 94 ("That's an inappropriate question. Don't comment on the court's ruling. Ask the question in a straightforward way, please."); *id.* at 105 ("You are walking in the well. You are not standing where I asked you to."); *id.* at 112 ("You continually stand in the well. Stand in back of the lectern."); *id.* at 187 ("Don't yell and point your finger at me.... Put that finger down and don't yell."); Trial Tr., Vol. 6 at 61 ("Please, I told you before the argument to argue from behind the lectern.... Follow my admonition. Don't make me interrupt your argument. You are an able lawyer.").

Several times during the trial, the district court expressed its exasperation with Goldman's failure to follow his previous orders not to argue objections. *See, e.g.,* Trial Tr., Vol. 4 at 149 ("I don't know how many times I've asked you not to argue the objection."); Trial Tr., Vol. 5 at 20 ("I

told you not to argue objections and you're violating that order."); *id.* at 25 ("I've asked you at least 20 times during this trial to not argue objections before the jury."); *id.* at 87 ("I asked you not to argue in front of the jury. You do that every time in violation of my order. That's inappropriate.... Now don't violate my order any more."); Trial Tr., Vol. 6 at 106 ("For the 30th time I've asked you not to argue in front of the jury until I seek argument."). On at least three occasions, Judge Wilson's admonishments took the form of warnings. *See* Trial Tr., Vol. 2 at 162 ("If you persist in disrupting my regulation of the trial, you are going to put me in a very uncomfortable position, which I don't want to be placed in."); Trial Tr., Vol. 4 at 30–31 ("Don't tell me no again. If you do one more time, if you interrupt one more time in that fashion, I will be compelled to do something I don't want to do. That is the last warning you have."); Trial Tr., Vol. 5 at 187 ("And let me tell you this now that I have finally reached of [sic] wits end. I cannot manage this case. Your conduct is intolerable and I've resisted this for four or five days, but I am now telling you as a last resort because I cannot deal with this any longer, that if you persist any longer in violating my instructions and directions, I am going to cite you for contempt.").

After becoming exasperated with Goldman toward the end of the trial Judge Wilson repeated his orders, stating:

Let me make it even clearer for you; one, you are not to argue objections.

Two. As I said at the outset, you are to stand up, make an objection and give a legal ground and wait for a [ruling].

Three. You are not to wander around the courtroom, especially in the well of the courtroom.

And four, you are not to shout and point fingers at me or anyone else.

And five, you are not to engage in discussions with the prosecutor or anyone

else unless the Court gives you leave to do so.

*Id.* at 187–88.

Finally, during Goldman's closing argument, the following exchange took place:

PROSECUTOR: Objection. No evidence, Your Honor.

GOLDMAN: It's his testimony. He said it on the stand.

COURT: Again, you've done that.

GOLDMAN: Your Honor, may we have the criticism once directed in this direction?

COURT: Approach the side bar.

COURT: [Sidebar] I am now citing you for contempt for willfully violating my order.

Trial Tr., Vol. 6 at 107.

After the trial, Judge Wilson issued an order to show cause why Goldman should not be held in contempt. Goldman then requested that Judge Wilson disqualify himself from presiding over Goldman's contempt hearing. The matter was reassigned to Judge George King, who denied Goldman's motion for recusal of Judge Wilson. After a contempt hearing, the court found Goldman guilty of criminal contempt under 18 U.S.C. §§ 401(1) and (3) and sentenced him to three days in jail.

## WHETHER GOLDMAN'S CONDUCT WAS APPROPRIATE

 Goldman first contends that the conduct should not have been punishable for contempt because when he argued objections he was merely protecting his record for appeal. He points out that Rule 51 of the Federal Rules of Criminal Procedure "requires a party to state the specific grounds upon which the evidence is admissible." *See United States v. Muniz,* 684 F.2d 634, 640 (9th Cir.1982).

Goldman, however, never indicated that preservation of the record was his intent. More important, none of the cases cited by Goldman hold that an offer of proof must be made in the presence of the jury. In

fact, Rule 103 of the Federal Rules of Evidence, which requires a "timely" objection or offer of proof to preserve an issue for appeal, specifically states that "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." Fed.R.Evid. 103(c).

Moreover, even if the district court had adopted an impermissible practice, the attorney's remedy would have been to raise the issue on appeal, rather than repeatedly violating the court's instructions. *See Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *United States v. Dowdy*, 960 F.2d 78, 81 (8th Cir.1992) ("Once a judge has ruled, the recourse of a zealous advocate lies in challenging the legality of that ruling on appeal, not in denigrating the wisdom and fairness of the court."); *Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers*, 552 F.2d 498, 508 (3d Cir.1977) ("[A] trial attorney's belief that certain action is necessary to protect the record for appellate review does not excuse his deliberate defiance of the trial judge's explicit and repeated orders").

For its part, the district court told both counsel of its concern about the effect of argument on the jury, and advised counsel that if necessary they could approach the bench for further discussion. This was in accordance with Fed.R.Evid. 103. While the rules do not expressly require district judges to adopt practices like that of Judge Wilson, a district court is acting within its discretion in doing so.

## WHETHER OBSTRUCTION OF JUSTICE IS A PREREQUISITE TO A FINDING OF CRIMINAL CONTEMPT UNDER 18 U.S.C. § 401(3)

■ Goldman, with the support of amicus NACDL, contends that obstruction of justice was required to support his contempt conviction under 18 U.S.C. § 401(3). In its entirety, Section 401 provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.

The statutory language of Section 401(3) contains no requirement of obstruction of justice, but Goldman and the NACDL argue for a special rule applicable to criminal defense attorneys. They maintain that the defendant's Sixth Amendment right to a fair trial is implicated by contempt orders against criminal defense counsel. There is no authority supporting such an exception to Section 401(3). The statute requires only that there has been "disobedience or resistance" to a court's "lawful writ, process, order, rule, decree, or command."

Subsection 3 is in contrast to Subsection 1, which does expressly require a finding of obstruction, because Subsection 1 is predicated on "misbehavior" rather than the violation of an express order. In fact, in the primary Ninth Circuit case cited by Goldman, *United States v. Thoreen*, 653 F.2d 1332 (9th Cir.1981), this court discussed actual obstruction in the context of 18 U.S.C. § 401(1)—which, as noted above, indisputably requires actual obstruction of justice. The *Thoreen* court began its analysis by describing the elements of §§ 401(1) and (3), specifically mentioning actual obstruction in the context of § 401(1) but not in the context of § 401(3). *See Thoreen*, 653 F.2d at 1339.

■ Here, the district court did find that Goldman's conduct actually obstructed

the administration of justice because it continued in the face of repeated warnings and chastisements. The district court had to chastise Goldman on more than two dozen occasions for arguing objections, entering the well of the courtroom, raising his voice, interrupting the court, waving documents, and pointing. Regardless of whether these incidents together or in isolation amounted to obstruction of the administration of justice under Section 401(1), Goldman's repeated disobedience deservedly risked a contempt sanction under Section 401(3). *See In re Gustafson,* 650 F.2d 1017, 1020 (9th Cir.1981) (en banc) (upholding contempt conviction of lawyer who "repeatedly ignored objections sustained by the court to the speed and content of his argument ... [and] disregarded the judge's instructions as to permissible argument"). The conduct merited the sanction of criminal contempt under 18 U.S.C. § 401(3).

### ALLEGED DISQUALIFICATION OF TRIAL JUDGE

■■■ Due process requires recusal of a judge who has become personally embroiled in a controversy and cannot therefore adjudicate it fairly. *See Mayberry v. Pennsylvania,* 400 U.S. 455, 465–66, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); *Offutt v. United States,* 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Goldman contends that a different judge should have presided at his post-trial contempt hearing. Although it is clear that Judge Wilson at times lost patience with Goldman on the basis of the court's belief that Goldman was flaunting the court's orders, the record does not support a contention that the judge was so "personally embroiled" with Goldman that disqualification was necessary. *See id.* Here, as the Seventh Circuit observed in *United States v. Griffin,* 84 F.3d 820, 831 (7th Cir.1996), "nothing in the · record suggests that [the district judge's] understandable frustration at trial tainted his ability to discharge his judicial duty at the posttrial contempt hearing." *Accord Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d

474 (1994) (stating in the context of 28 U.S.C. § 455(a) that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.... Not establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.").

Although he repeatedly admonished Goldman for violating courtroom protocol, Judge Wilson exhibited restraint, patience, and respect toward Goldman throughout the trial. *See, e.g.,* Trial Tr., Vol. 2 at 127 ("Please, Mr. Goldman, I mean you are an able lawyer. Your inflections don't add or subtract to [sic] the substance of your questions. Zeal for your client is expected, but please temper it somewhat; would you?"); Trial Tr., Vol. 3 at 51 ("Mr. Goldman, you know, as I said before, I certainly admire the zeal in [sic] which you have represented your client."); Trial Tr., Vol. 4 at 58 ("I thought your cross-examination was quite appropriate, and as it turns out, that we may just have not quite understood each other. In any event, I think you've developed some good points."); Trial Tr., Vol. 5 at 63–64 (Judge Wilson asked Goldman to explain his position, stating "perhaps I'll reverse my ruling"; after the explanation, the ruling was reversed).

In sum, the record reflects that the district court strictly enforced its rules as they were laid out to counsel in advance and retained its objectivity in ruling upon disputed points during trial. Goldman's conviction of criminal contempt was supported by the evidence. Judge Wilson did not err in presiding over Goldman's contempt hearing.

The judgment and order of criminal contempt are AFFIRMED.